El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
En esta ocasión debemos interpretar el alcance del Art. 42 de la Ley de Condominios, Ley Núm. 103-2003 (31 L.P.R.A. sec. 1293f). Además, nos corresponde resolver si una causa de acción en daños y perjuicios por parte de un titular de un apartamento dedicado a vivienda contra el Consejo de Titulares o su Junta de Directores, se encuen- *413 tra subsumida dentro del procedimiento ordinario para im-pugnaciones sobre determinaciones, acuerdos, acciones u omisiones de la Junta de Directores. Específicamente, de-bemos determinar si el Tribunal de Primera Instancia, por vía de una reconvención compulsoria al amparo de la Regla 11.1 de Procedimiento Civil, infra, y sustentada en el prin-cipio de economía procesal, adquiere jurisdicción para atender reclamaciones de un condomino hacia la Junta de Directores o el Consejo de Titulares.(1)
I
El Condominio Victoria Plaza (Condominio) es un edifi-cio residencial sometido al régimen de propiedad horizontal, localizado en el área del Condado del Municipio de San Juan. Está compuesto por 35 apartamentos residenciales distribuidos en 18 pisos o plantas. Los hechos que dan ori-gen a esta controversia surgen luego de que el 21 de mayo de 2008 ocurriera un desbordamiento de agua proveniente del Apartamento 2-B, propiedad de los recurridos Raúl Gó-mez Estremera y su señora esposa, María Cruz Romance. A su vez, dicha inundación causó daños al elevador de ser-vicios del Condominio. El costo y la labor para reparar el ascensor averiado fue de $10,765. Mediante una Asamblea Extraordinaria celebrada el 11 de agosto de 2008, se auto-rizó a la Junta de Directores a desembolsar fondos comu-nales para el pago de la reparación requerida.(2)
Por su parte, los esposos Gómez-Cruz presentaron una reclamación extrajudicial al Consejo de Titulares por los *414 daños sufridos, la cual fue referida a la aseguradora Universal Insurance Company. La reclamación fue atendida por ajustadores de la compañía de seguros quienes notifi-caron a los recurridos, el 23 de septiembre de 2008, que el Consejo de Titulares no era responsable ya que no existía una relación causal entre los daños sufridos y los trabajos realizados en el Condominio.
A tales efectos, y luego de requerir infructuosamente a los recurridos el pago de las cantidades desembolsadas para las reparaciones, el Consejo de Titulares, represen-tado por su presidente Joaquín Martínez Viguie, instó una demanda en daños y peijuicios contra éstos el 25 de febrero de 2009. Por su parte, los recurridos presentaron el 12 de junio de 2009 su contestación a la demanda y una recon-vención alegando que el 20 de mayo de 2008, personal con-tratado por el Condominio realizó trabajos en la cisterna del inmueble, vaciándola totalmente, limpiándola y vol-viéndola a llenar. Exponen que durante la madrugada del día de los hechos se escuchaban ruidos y vibraciones en la tubería del Condominio y que el agua salía con presión a intervalos y disparos de aire.
Consecuentemente, una tuerca de las mangas de la caja de agua del inodoro del baño del apartamento 2-B se rom-pió, causando así que se inundara el apartamento.(3) El líquido desbordado salió del apartamento y desembocó al elevador de servicios, causándole serios daños. En esencia, los esposos Gómez-Cruz negaron ser causantes del inci- *415 dente y por el contrario alegaron afirmativamente que la causa de la rotura e inundación fue el problema de alta presión en las tuberías.
Acorde con lo intimado, formularon varias causas de ac-ción en su reconvención por negligencia, en la cual solici-taron el resarcimiento de los daños causados a su propie-dad, y los daños físicos, mentales y morales causados al Sr. Gómez Estremera.
Es menester destacar que, según surge de las alegacio-nes de la reconvención, el personal de seguridad del Con-dominio intentó cerrar la llave de paso de agua ubicada en el área de los contadores fuera del apartamento. Sin embargo, no fue posible interrumpir oportunamente el flujo de agua debido al deterioro de ésta. La aludida llave de paso es propiedad del Condominio y está bajo su exclusivo control y mantenimiento. No fue hasta que los recurridos personalmente cerraron la llave de paso del inodoro dentro de su apartamento que finalmente se detuvo la inun-dación.
Así las cosas, el Condominio presentó una solicitud de desestimación de la reconvención, en la que argumentó que la reclamación de los esposos Gómez-Cruz contra el Con-sejo de Titulares no podía ser atendida por el Tribunal de Primera Instancia debido a que dicho foro carece de juris-dicción sobre la materia. Esgrimió que el foro adecuado para dirimir la referida reclamación es el Departamento de Asuntos del Consumidor (D.A.Co.). Basó su contención en el Art. 42 de la Ley de Condominios, supra, el cual le con-fiere jurisdicción a D.A.Co. para atender todas las impug-naciones de acuerdos que tome el Consejo de Titulares, así como las determinaciones, actuaciones u omisiones de la Junta de Directores con relación a la administración de un inmueble cuyos apartamentos estén dedicados a vivienda.
Los recurridos se opusieron a dicha solicitud según el fundamento de que el foro de instancia advino en jurisdic-ción del caso una vez los comparecientes instaron la de- *416 manda en su contra. Sostienen que estuvieron obligados a presentar su reconvención por ser ésta de carácter compulsorio.
Luego de varias incidencias procesales, el 16 de abril de 2010 el Tribunal de Primera Instancia declaró “no ha lu-gar” la solicitud de desestimación de la reconvención pre-sentada por el peticionario. Insatisfechos con el referido dictamen, el Consejo acudió al Tribunal de Apelaciones me-diante un recurso de certiorari. El 14 de junio de 2010 el foro apelativo intermedio dictó una Resolución denegando el auto solicitado y confirmando la determinación recurrida. El tribunal a quo fundamentó su decisión con-cluyendo que el foro de instancia no abusó de su discreción ya que “[l]a naturaleza de ambas reclamaciones evidencia que las mismas surgen de unos mismos hechos, por lo que la parte demandada-recurrida estaba en la obligación de presentar la reconvención”. (4)
No conteste con esta determinación, el peticionario pre-senta ante este Tribunal el recurso de certiorari de epígrafe en donde plantea los errores siguientes:
Erró el Honorable Tribunal de Apelaciones al resolver que el Tribunal de Primera Instancia, por vía de una Reconvención compulsoria, puede atender asuntos sobre los cuales no tiene jurisdicción sobre la materia.
Erró el Tribunal de Apelaciones al no considerar si es el DACO el foro con jurisdicción exclusiva para atender los asuntos planteados en la Reconvención relacionadas a los reclamos de los titulares Recurridos sobre las decisiones, acciones u omi-siones del Consejo de Titulares y/o de su Junta de Directores, al administrar un Condominio residencial. Petición de certio-rari, pág. 6.
Atendido el recurso, el 21 de enero de 2011 expedimos el auto de certiorari solicitado. Contando con el beneficio de los alegatos de ambas partes, procedemos a resolver.
*417 Conforme a lo anterior, y reconociendo que el Condomi-nio Victoria Plaza está sometido al régimen de propiedad horizontal, procede que examinemos las disposiciones de la Ley de Condominios para el análisis de las controversias ante nos.
II
A. La Ley de Condominios, Ley Núm. 103-2003, establece mecanismos para la tramitación de los inevitables conflictos dimanantes del modus vivendi de un condominio. Véase Srio. D.A.C.O. v. J. Condóminos C. Martí, 121 D.P.R. 807 (1988). Además, detalla el marco organizacional del gobierno interno, cuyo organismo rector y deliberativo es el Consejo de Titulares que a su vez rige, según la Ley de Propiedad Horizontal, la escritura matriz y el reglamento. Srio. D.A.C.O. v. J. Condóminos C. Martí, supra. En armonía con lo anterior, esta legislación dispone, en lo pertinente, que
[e]l Consejo de Titulares, la Junta de Directores y el Agente Administrador del condominio, tienen como deber primordial orientar sus acciones salvaguardando el principio de que el propósito del régimen de propiedad horizontal es propiciar el disfrute de la propiedad privada sobre el apartamiento y que la administración de las áreas y haberes comunes del edificio se realiza para lograr el pleno disfrute de este derecho. Corre-lativamente cada titular reconoce que el ejercicio del dominio en el régimen de propiedad horizontal está limitado por los derechos de los demás condominos y que el derecho de propie-dad sobre su apartamiento tiene que ejercerse dentro del marco de la sana convivencia y el respeto al derecho ajeno.(5)
Por consiguiente, la Asamblea Legislativa entendió que era necesario delegar ciertos deberes y facultades a la Junta de Directores como órgano ejecutivo de la comunidad de titulares. Entre éstos se encuentran:
*418 (a) Atender todo lo relacionado con el buen gobierno, admi-nistración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas ad-vertencias y apercibimientos a los titulares.
(g) Atender a la conservación del inmueble y disponer las reparaciones ordinarias y en cuanto a las extraordinarias, adoptar las medidas necesarias dando inmediata cuenta al Consejo.
(i) Cumplir y hacer cumplir las disposiciones de este Capí-tulo, del reglamento y los acuerdos del Consejo de Titulares. (Énfasis nuestro.) Art. 38D de la Ley Núm. 103-2003 (31 L.P.R.A. sec. 1293b-4).
La responsabilidad fundamental de la Junta de Directo-res “estriba en velar por el buen funcionamiento del condo-minio logrando que se ejecuten las disposiciones de la Ley de Propiedad Horizontal, la de la Escritura Matriz, del Re-glamento del Condominio, así como los acuerdos que se hayan aprobado en reuniones debidamente convocadas por el Consejo de Titulares”. M. J. Godreau, Personalidad jurí-dica, legitimación activa y propiedad horizontal: capacidad legal de la Junta de Directores y del presidente para llevar acciones a nombre del condominio, 64 (Núm. 3) Rev. Jur. U.P.R. 481, 481 (1995). Véanse, además: Consejo Cond. Plaza del Mar v. Jetter, 169 D.P.R. 643, 658 (2006); Amill v. J. Dir. Cond. Pumarada, 156 D.P.R. 495 (2002); Srio. D.A.C.O. v. J. Condóminos C. Martí, supra.
En lo referente a las impugnaciones de acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores, aplica el Art. 42 de la Ley de Condominios, supra. Esta disposición establece el foro adecuado y con jurisdicción para presentar las distintas acciones de impugnación al amparo del régimen de propiedad horizontal:
Los acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones del Director o de la Junta de Directo- *419 res, del titular que somete el inmueble al régimen que esta-blece esta Ley, durante el período de administración que con-templa el Artículo 36-A, del Presidente y del Secretario, concernientes a la administración de inmuebles que no com-prendan apartamientos destinados a vivienda o de titulares de apartamientos no residenciales en los condominios en donde exista por lo menos un apartamiento dedicado a vivienda, se-rán impugnables ante el Tribunal de primera instancia por cualquier titular que estimase que el acuerdo, determinación, omisión o actuación en cuestión es gravemente perjudicial para él o para la comunidad de titulares o es contrario a la ley, a la escritura de constitución o al Reglamento a que hace re-ferencia el Artículo 36. Las impugnaciones por los titulares de apartamientos destinados a viviendas se presentarán ante el Departamento de Asuntos al Consumidor. (Enfasis suplido.)
Así pues, acorde con los poderes conferidos por la referida ley, D.A.Co. promulgó el Reglamento Núm. 6728 sobre Condominios de 2 de diciembre de 2003, aprobado al amparo de la Ley Núm. 103-2003.(6) En éste se dispuso lo siguiente en cuanto a la jurisdicción del Departamento:

PARTE V QUERELLAS

SECCIÓN 26: JURISDICCIÓN DEL DEPARTAMENTO

El Departamento no tendrá jurisdicción para adjudicar que-rellas que surjan en condominios de uso exclusivamente co-mercial o profesional. Igualmente carecerá de jurisdicción en aquellos condominios donde exista por lo menos una unidad de vivienda, y la querella sea interpuesta por un titular o grupo de titulares de apartamentos no residenciales. En estos casos la jurisdicción corresponderá al Tribunal de Primera Instancia. El Departamento sólo atenderá reclamaciones del titular o grupo de titulares que sean propietarios de las uni-dades residenciales.
También quedará excluido de la jurisdicción del Departa-mento, toda reclamación que consista en cuestionar alguna cláusula contenida en la escritura matriz o el reglamento del condominio inscrito en el Registro de la Propiedad. Igual-mente quedan excluidos [sic] las querellas entre titulares o cuando el Consejo de Titulares o el Director o la Junta de Di *420 rectores entáble reclamación contra uno o varios titulares o residentes del condominio. La jurisdicción para ventilar estas acciones corresponderá al Tribunal de Primera Instancia. (En-fasis suplido.) íd., pág. 43.
Siendo ello así, “[l]a Ley de Propiedad Horizontal encomendó al foro administrativo, el D.A.Co., la rápida adjudicación de los reclamos que pudieran presentar los condominos, relativos a la administración del edificio”. Amill v. J. Dir. Cond. Pumarada, supra, pág. 500. Igualmente, le confirió jurisdicción exclusiva para entender en acciones de impugnación de los acuerdos del Consejo de Titulares, de las determinaciones, actuaciones u omisiones del Director o de la Junta de Directores, relacionadas con la adminis-tración de inmuebles que comprendan por lo menos un apartamento destinado a vivienda. Amill v. J. Dir. Cond. Pumarada, supra. Véanse, además: Consejo Cond. Plaza del Mar v. Jetter, supra, pág. 659; Srio. D.A.C.O. v. J. Condóminos C. Martí, supra; First Fed. Savs. v. Asoc. de Condómines, 114 D.P.R. 426 (1983).
“No obstante, la jurisdicción exclusiva conferida al DACO no se extiende a toda posible causa de acción dima-nante de un condominio sometido al régimen de la propie-dad horizontal.” (Enfasis en el original.) Consejo Cond. Plaza del Mar v. Jetter, supra, pág. 662.
Conforme con todo lo anterior, y según surge de la interpretación de D.A.Co. en su comparecencia como amicus curiae en Consejo Cond. Plaza del Mar v. Jetter, supra, la Ley de Propiedad Horizontal de 1976 no le confirió jurisdicción para dirimir reclamaciones o acciones que puedan hacerse entre sí los titulares o aquellas presentadas por el director o por la Junta de Directores en representación del Consejo de Titulares contra un titular. Al respecto, D.A.Co. manifestó:
“[S]i el titular o grupo de titulares de un condominio ejercita la acción de impugnación que le autorizan los Artículos 42 y 48 de la Ley, y a la vez solicita indemnización que pudiera corres- *421 ponderle bajo el Código Civil por daños ocasionados por la con-ducta negligente de los cuerpos ejecutivos del Condominio, este Departamento podría adjudicar ambas reclamaciones al estar autorizado para ello, por virtud de lo dispuesto en el Artículo 51 [de la concernida Ley], Sin embargo, no es esa la situación del caso de autos. ... Al Departamento nunca le ha sido conferida jurisdicción para atender reclamos que puedan realizarse entre sí los titulares o aquellas presentadas por el director o la Junta de [Directores en representación del Con-sejo de Titulares, contra un titular ....” (Enfasis en el original.) Cond. Plaza del Mar v. Jetter, supra, pág. 662.
Del mismo modo, la Ley de Condominios establece el término que posee el titular afectado para llevar a cabo dicha impugnación. El inciso (a) procura
... reducir el número de querellas ante el foro administrativo, al requerir del querellante que ventile primero ante los orga-nismos internos del condominio, bien ante la propia Junta o ante un Comité de Conciliación, cualquier querella en la que se cuestione una acción u omisión del Administrador o de la propia Junta. M. Godreau, La Nueva Ley de Condominios, 2da ed., San Juan, Ed. Dictum, 2003, pág. 39.
Con este procedimiento se persigue “acreditar ante la agencia que se le hizo el planteamiento ante el organismo interno y que éste, o no lo atendió oportunamente, o si lo atendió se ratificó en la acción o en la omisión que el titular entiende le es gravemente perjudicial”. íd., pág. 39.
La presentación de la reclamación internamente tendrá que hacerse dentro del término de treinta (30) días de conocida la acción u omisión que se impugna. La Junta o el Comité de Conciliación en su caso tendrán treinta (30) días para resolver el asunto. Si el titular considera adversa la decisión de la Junta o del Comité, podrá entonces recurrir al DACO. De igual forma, si la Junta o el Comité no toman acción dentro de los sesenta (60) días desde que el titular sometió su queja, puede éste recurrir a la agencia con su querella.
El DACO se reserva la facultad de eximir al titular de ago-tar este procedimiento, si así lo ameritase la naturaleza del caso. íd., pág. 40.
En cuanto al término de prescripción para ejercer la acción, el inciso (c) del Art. 42 señala:
*422 (c) La acción de impugnación de acuerdos, acciones u omi-siones de la Junta de Directores, del Consejo de Titulares, con excepción de los realizados por el titular que somete el inmue-ble al régimen, que violen las disposiciones de [esta Ley], de la escritura matriz o del Reglamento del condominio, prescribirá a los dos (2) años de haberse notificado el acuerdo, tomado la acción o de conocerse la omisión. Para los titulares que impug-nen este tipo de acuerdo del Consejo de Titulares, el término se computará a partir de la notificación del mismo, siempre y cuando cumplan con los requisitos establecidos en el párrafo siguiente.
Al ejercitar la acción de impugnación de acuerdos del Con-sejo de Titulares, el titular deberá acreditar que estuvo pre-sente o representado en la reunión en que se tomó el acuerdo que impugna y que no votó a favor del mismo. Si estuvo au-sente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada. (Énfasis suplido.)
Por lo tanto, el término para impugnar una determinación al amparo del Art. 42 dependerá de dos factores. Primero, contra quién se dirige la acción. Segundo, el fundamento de la impugnación. Si la acción de impugnación es contra el Agente Administrador o la Junta de Directores, se seguirá el procedimiento dispuesto por el Art. 42(a) y el término será de 30 días. Si se impugnan los acuerdos y las determinaciones del Consejo de Titulares porque a juicio del titular estas son “gravemente perjudiciales para él”, se recurrirá al Art. 42(b) y el término será, igualmente, de 30 días.
Ahora bien, si lo que se impugna son los acuerdos, ac-ciones u omisiones de la Junta de Directores o el Consejo de Titulares alegándose que éstos han violado la Ley de Condominios, el Reglamento de la comunidad o la escri-tura matriz, el término será de dos años, según dispone el Art. 42(c). En todos estos casos, el foro con jurisdicción pri-maria exclusiva es el Departamento de Asuntos del Consumidor.
Establecido el alcance de las disposiciones aplicables bajo la Ley de Condominios, es menester analizar la figura *423 de la reconvención y su función según la Regla 11.1 de Procedimiento Civil, supra.
B. La Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill (ed. 1983), establece que toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva, ya sea demanda, reconvención, demanda contra coparte o demanda contra tercero. A me-nos que, a opción de la parte que alega, pueda formular las defensas siguientes mediante una moción fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, y (6) dejar de acumular una parte indispensable.
Reiteradamente hemos señalado que cuando los tribunales se enfrentan a una moción de desestimación, deberán examinar los hechos alegados en la demanda lo más liberalmente posible a favor de la parte demandante. Así, no procede la desestimación a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. (7) De este modo, los tribunales tienen el deber de considerar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida. (8)
De igual modo, una parte puede presentar una reclamación contra una parte adversa a través del mecanismo de la reconvención. Conforme al ordenamiento procesal vigente, existen dos tipos de reconvenciones: las *424 permisibles y las compulsorias. S.L.G. Font Bardón v. Mini-Warehouse, 179 D.P.R. 322, 332 (2010). Las reconvencio-nes permisibles son aquellas reclamaciones que no surgen del mismo acto, omisión o evento que motivó la reclama-ción de la parte contra la que se presenta. (9) La Regla 11.1 de Procedimiento Civil, supra, regula lo concerniente a las reconvenciones compulsorias. Al respecto, dispone lo si-guiente:
Una alegación contendrá por vía de reconvención cualquier reclamación que la parte que la formula tenga contra cual-quier parte adversa al momento de notificar dicha alegación, siempre que surja del acto, de la omisión o del evento que mo-tivó la reclamación de la parte adversa y no requiera para su adjudicación la presencia de terceros sobre quienes el tribunal no pueda adquirir jurisdicción. Sin embargo, no será necesario incluir dicha reclamación mediante reconvención, si al mo-mento de comenzarse el pleito tal reclamación era ya objeto de otro pleito pendiente. (Enfasis suplido.)
En virtud de ello, una parte que tenga una reclamación que dimane del mismo acto, omisión u evento objeto de una demanda, deberá notificar a su contraparte una reconven-ción al momento de presentar su alegación respondiente. Consecuentemente, la Regla 11.1, supra, “obliga a la parte demandada a formular, al momento de su contestación, cualquier reclamación compulsoria, es decir, cualquier re-clamación que tenga contra la parte adversa, si ésta surge de la acción, omisión o evento que motiva lá reclamación de la parte demandante”. Neca Mortg. Corp. v. A & W Dev. S.E., 137 D.P.R. 860, 866 (1995). El propósito de esta regla es evitar la multiplicidad de litigios al establecer un meca-nismo para dilucidar todas las controversias comunes en una sola acción. (Enfasis suplido.) Id., pág. 867.
Una reconvención es compulsoria: (1) “si existe una relación lógica entre la reclamación presentada en la demanda y la que es objeto de la reconvención”; (2) *425 “cu[a]ndo los hechos esenciales de ambas reclamaciones es-tán tan vinculados que la economía judicial exige que se ventilen en conjunto”-, (3) “[s]i las cuestiones de hecho y de derecho entre ambas son las mismas”; (4) “si la doctrina de res judicata impediría una acción independiente”, y (5) “si ambas reclamaciones surgen de la misma prueba y están vinculadas lógicamente”. R. Hernández Colón, Práctica ju-rídica de Puerto Rico: derecho procesal civil, 4ta ed., San Juan, Ed. LexisNexis de Puerto Rico, 2007, pág. 218.
Ahora bien, si una reconvención compulsoria no se formula a tiempo, se renuncia a la causa de acción que la motiva, y quedarán totalmente adjudicados los hechos y reclamaciones sin que el demandado pueda presentar posteriormente una reclamación que haya surgido de los mismos eventos. S.L.G. Font Bardón v. Mini-Warehouse, supra, pág. 333; Neca Mortg. Corp. v. A & W Dev. S.E., supra, pág. 867. Le será aplicable, por analogía, el principio de cosa juzgada, al efecto de que será concluyente en relación con aquellos asuntos que pudieron haber sido planteados y no lo fueron. Sastre v. Cabrera, 75 D.P.R. 1, 3 (1953).
En Sastre v. Cabrera, supra, resolvimos que cuando se presenta una demanda ante un tribunal, cuya competencia está limitada por razón de la cuantía, el demandado está obligado a presentar su reconvención compulsoriamente, aun cuando la cuantía reclamada en la reconvención ex-ceda de aquella que limita la competencia del tribunal ante el cual pende el pleito. La congestión de pleitos y la litiga-ción repetitiva puede eludirse obligando a que todas las reclamaciones relacionadas entre sí se ventilen en un mismo proceso. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., San Juan, Pubs. JTS, 2011, T. II, pág. 558. (10)
*426 De igual forma, en el ámbito federal, la presentación de una reconvención compulsoria surge como motivo de cual-quier reclamación que se tenga contra la parte adversa, si ésta surge de la acción u omisión, o evento que motiva la reclamación de la parte demandante. Nuestra Regla 11.1 de Procedimiento Civil, supra, procede, en su mayoría, de la Regla 13(a) de Procedimiento Civil Federal(11) En ese sentido, la exégesis conferida en el entorno federal al me-canismo de la reconvención es persuasiva para este Tribunal en la medida que no sea contraria al texto de nuestra regla o al marco interpretativo de nuestras normas proce-sales civiles.
Como corolario de la doctrina, los tribunales apelativos federales han interpretado liberalmente esta regla en aras de exhortar a la proliferación del principio de economía judicial. En Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3er Cir. 1978), la corte federal para el tercer circuito ex-presó:
... a counterclaim is logically related to the opposing party’s claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic contro *427 versy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action.(12)
Similar exégesis para adjudicar ambas reclamaciones en un mismo pleito ha sido plasmada por el Tribunal Supremo de Estados Unidos. El raciocinio consiste en el deseo de evitar sujetar las partes a resultados incompatibles pro-venientes de diferentes foros.(13) Así pues, la doctrina de cosa juzgada es de aplicación al denegar una reclamación que debió haber sido presentada anteriormente como parte de una reconvención compulsoria. Esto es así ya que los hechos, controversias y las partes de la reconvención son sustancialmente idénticos a los hechos, controversias y las partes de la reclamación original. Koppers Co., Inc. v. American Exp. Co., 121 F.R.D. 46, 49 (1988).
En lo pertinente a las objeciones basadas en falta de jurisdicción, la jurisprudencia procesal que ha interpreta la Regla 13(a) de Procedimiento Civil Federal, supra, ha sostenido que una reconvención compulsoria es válida y puede ser presentada en el tribunal siempre y cuando la demanda original cumpla con los requisitos necesarios para que el foro federal pueda asumir jurisdicción sobre la misma.(14)
En armonía con lo anterior, los tribunales apelativos fe-derales han reiterado que al demandante entablar su re-clamación en el foro judicial, se encuentra imposibilitado de objetar el que una reconvención compulsoria sea pre-sentada en el mismo escenario que la demanda original. Es decir, renuncia a su derecho de objetar una alegada falta de jurisdicción en la reconvención.(15) A tales efectos, los *428 profesores Wright, Miller y Kane articulan en su tratado de derecho procesal como sigue:
Plaintiff may not object that the court lacks personal jurisdiction or that venue is improper for purposes of adjudicating a compulsory counterclaim that defendant has interposed. By choosing a particular forum in which to seek affirmative relief, plaintiff effectively waives any objections to that forum based on personal inconvenience. Moreover, Section 1391 of Title 28, which sets forth the statutory venue scheme, speaks in terms of where a suit may be “brought.” Courts typically have interpreted this reference literally and have held that in the counterclaim context the suit already has been “brought” and the statutory requirements have been satisfied on the basis of the original claim. Therefore, a defendant who is forced to assert a counterclaim under Rule 13(a) may do so even though venue would not be proper if the counterclaim were prosecuted as an independent suit. (Escolios omitidos y énfasis suplido.) 6 Wright, Miller and Kane, Federal Practice and Procedure Sec. 1416, págs. 140-142 (2010).
Analizado el marco jurídico que alberga la Regla 11.1 de Procedimiento Civil, supra, pasemos a examinar los pre-ceptos reconocidos en nuestro ordenamiento jurídico apli-cables a la interpretación de las leyes y al principio de hermenéutica legal.
C. El Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14, dispone que cuando la ley es clara y libre de toda ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir con su espíritu.
Empero, este enunciado de auto-limitación no implica que el tribunal quede imposibilitado de ejercer un rol de intérprete de la ley. En cuanto a la discreción judicial, esta Curia ha expresado que
[ljos tribunales estamos autorizados a interpretar las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma; o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere. (Enfasis *429 en el original.) Pueblo v. Ortega Santiago, 125 D.P.R. 203, 214 (1990).(16)
De igual forma hemos resuelto en cuanto a la interpretación literal de las leyes, que la letra de la ley no debe seguirse ciegamente cuando ello iría en detrimento de su espíritu y su fin. Sucn. Álvarez v. Srio. de Justicia, 150 D.P.R. 252, 274 (2000).(17) En ese sentido, aplica el principio rector en materia de hermenéutica esbozado en el caso Morell et al. v. Ojeda et al., 151 D.P.R. 864, 877 (2000), en el cual se aclara que “[a]l interpretar una disposición específica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener”. (Énfasis suprimido. )(18)
Similar exégesis acogimos en Mun. San Juan v. Banco Gub. Fomento, 140 D.P.R. 873 (1996), en el cual aclaramos que cuando el lenguaje de un estatuto falla en mostrar la intención legislativa, es necesario rechazar la interpretación literal, cuando esta es claramente contraria a la verdadera intención o propósito legislativo. Además expresamos que cualquier interpretación de ley que conduzca a una conclusión absurda, ha de ser rechazada, pues al ejercer nuestra función interpretativa, estamos obligados a armonizar, en la medida posible, todas las disposiciones de ley involucradas en aras de obtener un resultado más sensato, lógico y razonable. íd., pág. 884. Así pues, aplicamos estas normas de hermenéutica legal, que no son *430 arbitrarias o caprichosas, pues todas descansan en sanos principios de lógica. Central Boca Chica, Inc. v. Tesorero de P.R., 54 D.P.R. 424, 432 (1939).
Con estos principios como norte, procedemos a atender la situación fáctica que nos ocupa.
i — I hH I — 1
En su recurso, el peticionario plantea, en síntesis, que el Tribunal de Primera Instancia erró al denegar su moción de desestimación a la reconvención de los recurridos. Espe-cíficamente, arguye que la controversia sobre la aplicabili-dad de la jurisdicción de D.A.Co. al amparo del Art. 42 de la Ley de Condominios, supra, es un asunto de “jurisdic-ción sobre la materia”. No le asiste la razón. Por el contra-rio, se trata sobre la doctrina de jurisdicción primaria. Veamos.
La aplicación de la doctrina de jurisdicción primaria exige que los tribunales emprendan la tarea de examinar los alcances de la ley habilitadora de una agencia y determinar si el asunto cae estrictamente dentro de su ámbito. Además, le exige que ponderen y determinen si es imprescindible y necesario que se resuelva en favor de que intervenga inicialmente la agencia. D. Fernández Quiñones, Derecho administrativo y la ley de procedimiento administrativo uniforme, 2da ed., Bogotá, Ed. Forum, 2001, pág. 443.
No debemos perder de perspectiva que este Tribunal ha resuelto que “la doctrina [de jurisdicción primaria] no es una camisa de fuerza, y bajo ciertas circunstancias hemos reconocido su inaplicabilidad”. Ortiz v. Panel F.E.I, 155 D.P.R. 219, 246 (2001). Así pues, no aplica cuando “[l]a naturaleza de la causa de acción presentada y el remedio solicitado destacan que no se presentan cuestiones de derecho que exijan el ejercicio de discreción y de *431 peritaje administrativo, es decir, cuando la cuestión que se plantea sea puramente judicial”. Id., citando a Fernández Quiñones, op. cit., See. 8.4, págs. 443-444.
En resumidas cuentas, “la regla general es que un tribunal debe aplicar la doctrina de jurisdicción primaria en todo caso en el cual el peritaje de una agencia sea indispensable para resolver la controversia”. Ortiz v. Panel del F.E.I, supra, pág. 247. “A modo de excepción, si la cuestión implicada es estrictamente de derecho” (como lo es el caso de marras que versa sobre una reconvención basada en una causa de acción en daños y perjuicios al amparo del Artículo 1802 del Código Civil), “el tribunal retendrá la jurisdicción”. Id.
Conviene puntualizar que D.A.Co. retiene jurisdicción primaria exclusiva para entender en acciones de impugnación de los acuerdos del Consejo de Titulares, de las determinaciones, actuaciones u omisiones del Director o de la Junta de Directores, relacionadas con la administración de inmuebles que comprendan por lo menos un apartamento destinado a vivienda.
Cuando se impugnen los acuerdos del Consejo de Titu-lares, las determinaciones, actuaciones u omisiones del Director o las de la Junta de Directores, con relación a la administración de aquellos inmuebles que comprendan por lo menos un apartamento destinado a vivienda, se debe recurrir al Art. 42 de la Ley de Condominios. Dependiendo del inciso que corresponda al fundamento de la impugna-ción, el término para presentar la acción será de 30 días o dos años y el foro con jurisdicción primaria exclusiva es D.A.Co.
Ahora bien, cuando la acción vaya dirigida al resarci-miento de daños bajo el Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141, el término prescriptivo será el que se dispone en el Art. 1868 de dicho Código(19) y no el del Art. *432 42 de la Ley de Condominios. Por consiguiente, el término para presentar dicha acción es de 1 año y el foro con juris-dicción es el Tribunal de Primera Instancia.
Igualmente, en pleitos incoados por el Consejo de Titu-lares contra un titular individual el Art. 1802, supra, las reconvenciones compulsorias que surjan del mismo artí-culo no estarán sujetas al término de 30 días o 2 años, según sea el caso, ni a la jurisdicción exclusiva de D.A.Co. que establece el Art. 42 de la Ley de Condominios, supra.
Lo anterior nos parece razonable; por ende, nos vemos imposibilitados de avalar la postura asumida en la opinión disidente. Esta aplica erróneamente el Art. 42 de la Ley de Condominios a circunstancias en las que el reclamo contra el Consejo de Titulares se basa en alegados daños causados por la negligencia de éste. Además, rechazamos el análisis que sostiene que la interpelación presentada por los recu-rridos está relacionada con los deberes que le impone la ley a dicho organismo.
Asimismo, aun si entendiéramos que aplica el Art. 42 de la Ley de Condominios, lo cual rechazamos, aplicaría el inciso (b) de este. No debemos olvidar que el reclamo enta-blado contra el Consejo de Titulares se basa en las acciones que el titular estimó eran “gravemente perjudiciales para él” y que estaban relacionadas a unos hechos que provoca-ron la inundación de su apartamento. En ningún momento se imputaron violaciones a la Ley del Condominio, al Re-glamento o a la escritura matriz. Imponer esta carga a los titulares de apartamentos regidos por la Ley de Condomi-nios, es sumamente excesiva y onerosa.
No debemos perder de perspectiva que el efecto que con-llevaría endosar esta interpretación limitaría excesiva-mente el término prescriptivo que ostenta un titular para presentar una acción contra el Consejo de Titulares por actuaciones perjudiciales en las que media culpa o negligencia. Es decir, el plazo de un año que tendría según *433 el Código Civil quedaría acortado a 30 días bajo la Ley de Condominios en casos bajo el Art. 42(b), en los que no se alegue que el Consejo de Titulares violó la Ley de Condo-minios, el Reglamento de la comunidad o la escritura matriz. No nos convence este proceder, pues entendemos que el legislador no lo vislumbró de esta manera.
Peor aún, el efecto de interpretar este tipo de acción como una cobijada por el Art. 42, provocaría que cualquier Consejo de Titulares que entendiera que tiene una causa de acción contra un titular pueda recurrir a la “inacción temporera” como medida estratégica. Esta consiste en no presentar la acción judicial y esperar que el titular, quien podría tener una reconvención legítima, se quede sin un mecanismo para poder resarcir los daños una vez pase el término de 30 días anteriormente mencionado.
De las alegaciones de la reconvención presentada se deduce que la causa de acción que motivó la reconvención surge del Art. 1802 del Código Civil, supra, y no del citado Art. 42 de la Ley de Condominios. Por lo tanto, el Tribunal de Primera Instancia era el foro con jurisdicción para aten-der la misma. Recordemos que la causa de acción tuvo su génesis en el desbordamiento de agua proveniente del Apartamento 2-B, propiedad de los esposos Gómez-Cruz. Este mismo suceso fue el que motivó la demanda original presentada por el peticionario. La naturaleza de ambas re-clamaciones evidencia que las mismas surgen de unos mis-mos hechos, y consecuentemente los recurridos estaban en la obligación de presentar la reconvención, ya que, de lo contrario, se entendería renunciada y sería de aplicación por analogía la doctrina de cosa juzgada. Fíjese que me-diante una reconvención, la parte demandada “puede dis-minuir o derrotar la reclamación de la parte adversa y también puede reclamar un remedio por cantidad mayor o de naturaleza diferente al solicitado en la alegación de la parte adversa”, según dispone la Regla 11.3 de Procedi-miento Civil, supra.
*434 Es importante señalar que es un reconocido principio el deber ministerial de los tribunales de velar por su jurisdicción. No obstante, el conducir a las partes a una innecesaria e indeseable multiplicidad de acciones, resulta en un claro incumplimiento con este mandato. Permitir acreditar dentro del pleito las reclamaciones de los recurri-dos que forman parte de la reconvención, tendría el efecto de brindar más celeridad y economía judicial a los procesos. Este principio se encuentra encarnado en la Re-gla 1 de Procedimiento Civil que postula como factor pre-eminente que las disposiciones de ese cuerpo procesal “[s]e interpretarán de modo que garanticen una solución justa, rápida y económica de todo procedimiento”. (Enfasis suplido.) 32 L.P.R.A. Ap. Ill (ed. 1983).
Cónsono con lo anterior, en López Valdés v. Tribunal Superior, 96 D.P.R. 779, 792 (1968), expresamos que “[u]n principio cardinal en nuestro derecho procesal es el de evi-tar la multiplicidad de pleitos, y de adjudicar en una causa las distintas reclamaciones de las partes cuando la natura-leza de las causas lo permiten”. De igual forma, expusimos sobre la finalidad de la consolidación los propósitos si-guientes: “evitar la proliferación de acciones, lograr la eco-nomía procesal y evitar la indeseable probabilidad de que surjan fallos incompatibles relacionados con un mismo incidente.” (Enfasis suplido.) Vives Vázquez v. E.L.A., 142 D.P.R. 117, 125 (1996). Véase Granados v. Rodríguez Estrada II, 124 D.P.R. 593, 608 (1989).
El caso de autos trata de un peticionario que solicita la revocación de una determinación del foro a quo que preci-samente evita el fraccionamiento de los procedimientos. La prueba que el tribunal ha de considerar es la misma. La exigencia de que se diluciden las reclamaciones de los re-curridos en D.A.Co., sin duda, representarán costos adicio-nales para ambas partes y una innecesaria dilación del trámite judicial. No hemos encontrado justificación razo-nable alguna para revocar la determinación tomada por el *435 tribunal de instancia y confirmada por el tribunal apela-tivo intermedio. Por el contrario, los principios antes dis-cutidos y las circunstancias particulares del caso de ma-rras nos han convencido de que no se ha cometido error alguno.
IV
Por los fundamentos antes expuestos, se confirma la Re-solución emitida por el Tribunal de Apelaciones. Se remite el caso al Tribunal de Primera Instancia para la continua-ción de los procedimientos a tenor con lo aquí resuelto.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Martínez Torres emitió una opi-nión disidente, a la cual se unió el Juez Asociado Señor Kolthoff Caraballo.

 Los hechos procesales que originaron el recurso de epígrafe tuvieron lugar durante la vigencia de las Reglas de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III (ed. 1983)), por lo que haremos referencia a dicho cuerpo de reglas para disponer de la controversia que nos ocupa. No obstante, la Regla 11 de Procedimiento Civil de 1979, supra, no fue objeto de cambios significativos en las Reglas de Procedimiento Civil de 2009 (32 L.P.R.A. Ap. V). Consecuentemente, la doctrina que pautamos a través de esta Opinión es vinculante a la interpretación y aplicación de la Regla 11 de Procedimiento Civil de 2009, supra.

 Véase Apéndice de la Petición de certiorari, págs. 34-35.

 Cabe señalar además que, según se deduce de la reconvención, alegadamente en o alrededor del 16 de julio de 2006, uno de los tubos del calentador de línea del Apartamento 5-B sufrió daños como resultados de cambios de la presión de agua. En esa ocasión, se afectó el elevador de servicios, el cual fue reparado por la compañía Otis. Luego, en o alrededor del 21 de diciembre de 2007, la toma de agua del Apar-tamento 17-B se rompió debido a problemas en la presión de agua. Posteriormente, el 13 de febrero de 2008, el Apartamento 18-B sufrió daños en su tubería que causó un desbordamiento de agua que afectó otra vez el funcionamiento del elevador de servicios. Estos tres incidentes eran del conocimiento de la Junta de Directores, sus miembros, la Administración y el Consejo de Titulares. Ninguno de los titulares de estos apartamentos fueron demandados por el Consejo de Titulares por los daños causados al elevador de carga o a cualquier otra propiedad comunal. Véase Apéndice de la Petición de Certiorari, págs. 42-43.

 Apéndice de la Petición de certiorari, pág. 10.

 Art. 1-A de la Ley Núm. 103-2003 (31 L.P.R.A. see. 1291 n.).

 Este estatuto derogó el Reglamento Núm. 2438 sobre Condominios, promul-gado al amparo de la Ley Núm. 157-1976 (1976 Leyes de Puerto Rico 484).

 Véanse: Rivera v. Jaume, 157 D.P.R. 562 (2002); Clemente v. Depto. de la Vivienda, 114 D.P.R. 763 (1983); Reyes v. Sucn. Sánchez Soto, 98 D.P.R. 305 (1970).

 Véanse: Pressure Vessels P.R. v. Empire Gas P.R., 137 D.P.R. 497 (1994); Unisys v. Ramallo Brothers, 128 D.P.R. 842 (1991).

 Regla 11.2 de Procedimiento Civil, supra.

 Véanse, además, R.G. Financial Corp. v. Vergara-Nuñez, 446 F.3d 178 (1er Cir. 2006), y la anotación Failure to assert matter as counterclaim as precluding assertion thereof in subsequent action, under federal rules or similar states rules or statutes, 22 A.L.R.2d 621 (1952).

 La Regia 13(a) de Procedimiento Civil Federal dispone, en lo pertinente:
“(a) Compulsory Counterclaim.
“(1) In General. A pleading must state as a counterclaim any claim that -at the time of its service- the pleader has against an opposing party if the claim:
“(A) arises out of the transaction or occurrence that is the subject matter of the opposing party’s claim; and
“(B) does not require adding another party over whom the court cannot acquire jurisdiction.
“(2) Exceptions. The pleader need not state the claim if:
“(A) when the action was commenced, the claim was the subject of another pending action; or
“(B) the opposing party sued on its claim by attachment or other process that did not establish personal jurisdiction over the pleader on that claim, and the pleader does not assert any counterclaim under this rule.
“(b) Permissive Counterclaims. A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.” Fed.Rules Civ.Proc.Rule 13(a), 28 U.S.C.A.

 Véase, además, Great Lakes Rubber Corp. v. Herbert Copper Co., 286 F.2d 631, 634 (3er Cir. 1961).

 Véase Montana v. United States, 440 U.S. 147 (1979).

 Véase Lesnik v. Public Industrials Corporation, 144 F.2d 968 (2do Cir. 1944).

 Véanse: Schoot v. U.S., 664 F.Supp. 293, 295 (1987); Watson v. Manhattan and Bronx Surface Transit Operating Authority, 487 F.Supp. 1273, 1276 (D. N.J. 1980); Lesnik v. Public Industrials Corporation, supra.

 Véanse, además: Alonso García v. S.L.G., 155 D.P.R. 91, 98 (2001); Sucn. Álvarez v. Srio. de Justicia, 150 D.P.R. 252 (2000); Bco. Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651 (1997).

 Véase, además, Pueblo v. Zayas Rodríguez, 147 D.P.R. 530 (1999).

 Véanse también: Dorante v. Wrangler of P.R., 145 D.P.R. 408 (1998); Chase Manhattan Bank v. Mun. de San Juan, 126 D.P.R. 759, 766 (1990); R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1987, pág. 245.

 31 L.P.R.A. sec. 5298.